IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILLY A. MERRIFIELD,

    Plaintiff,

v.                                                                     Civ. No. 08-122 RLP/ACT

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF SANTA FE, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are the Defendants' Motions for Summary Judgment based on qualified immunity. Because the Court finds that no constitutional violation has occurred, it grants the motions and dismisses the case.[1]

The facts of this case are set out in the Court's two previous Memoranda Opinion and Orders [Doc. 83 & 106] and are briefly summarized here. Mr. Merrifield was employed by the County of Santa Fe in a supervisory position. On January 22, 2007, while in Florida on a business trip, he e-mailed from his County-issued cell-phone a sexually explicit/pornographic image to a subordinate in violation of County policies. The image was transmitted to the subordinate's personal cell-phone during work hours and the subordinate commenced to share the image with other County employees, some of whom were offended and reported the incident. An investigation commenced the next day, January 23, and when Mr. Merrifield returned to work on January 25, 2007, he was informed that he was being placed on administrative leave for violating County policies.

---

[1] There is no *respondeat superior* liability against a municipality; it may only be found liable for actions that represent its "official policy." *Monell v. Department of Social Services*, 436 U.S. 658, 690-95 (1978). Because the Court finds no constitutional violation, the case against the Board of County Commissioners necessarily fails.

On March 8, 2007 Plaintiff was provided with a pre-termination hearing and was represented by counsel. At the conclusion of this hearing, he was terminated from his employment. He appealed the termination and the Hearing Officer selected by the County heard evidence for nine days over a three-month period. At this post-termination hearing Plaintiff was again represented by counsel and had the opportunity to present evidence and cross-examine witnesses.

In the previously mentioned two opinions, this Court found (1) that the hearing officer had utilized the wrong standard of review and this Court reversed that decision [Doc. 83]; and (2) that Plaintiff's due process rights were not violated [Doc. 106]. The remaining claim in this case is whether Defendants retaliated against Mr. Merrifield for exercising his First Amendment right of association. A hearing on this matter was held on February 3, 2010.

Defendants are sued in their individual and official capacities. A claim against a municipal official in her official capacity is treated as a claim against the entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Therefore, when a § 1983 complaint asserts a claim against a municipal entity and municipal official in her official capacity, the claims are duplicative.

By contrast, an individual (or a personal) capacity claim seeks monetary recovery payable out of the responsible official's personal finances. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). These individual liability defendants may avoid personal liability if they prevail on their defense of qualified immunity. *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005).

> Government officials are entitled to qualified immunity from
> liability for civil damages under § 1983 when their conduct

>does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir. 2006) (internal quotation marks & citation omitted).

Once a defense of qualified immunity has been raised, we consider two questions: (1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendants' actions. *Id.* at 1138. Pursuant to *Pearson v. Callahan*, -- U.S.--, 129 S.Ct. 808 (2009), the Court may determine the two foregoing questions in any order. *See Christensen v. Park City Municipal Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

"The right to retain and consult an attorney . . . implicates . . . clearly established First Amendment rights of association and free speech." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990). A government cannot impede an individual's ability to consult with counsel on legal matters. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 376 n.32 (1977). The parties have primarily focused on whether the law was "clearly established." The law is clear that an individual has a First Amendment right to consult with and retain counsel. What is not clear is whether a public employee must show that the underlying matter is one of public concern, as is required in free speech cases. *See Garcetti v. Cebellos*, 547 U.S. 410, 420 (2006) ( a government employee is not protected from discipline based on speech made pursuant to official duties because the First Amendment does not empower public employees to "constitutionalize the employee grievance.")

In *Shrum, supra*, the court observed that "[n]either this Court nor the Supreme Court has determined, as a general matter, whether [the] public concern requirement applies to freedom of association claims." 449 F.3d at 1138. And in *Lunow v. City of Oklahoma City*,

61 Fed.Appx. 598 (10th Cir. 2003) (unpublished opinion), the court noted that the circuits "are split as to whether the 'public concern' analysis governs freedom-of-association claims." *Id.* at 606.

Having reviewed the parties' submissions and having heard oral arguments, the Court finds that Defendants did not retaliate against Mr. Merrifield in violation of his First Amendment rights, and so it does not reach the issue of whether Mr. Merrifield must show that his association with counsel was a matter of public concern.

Mr. Merrifield submits as evidence of retaliation (1) the fact that he was terminated; (2) that in addition to Mr. Parrish's statement (discussed below), the County had a custom, practice, and policy of threatening adverse consequences against employees who retained counsel; and (3) his belief that the County interfered with future employment in the field of law enforcement.

When Mr. Merrifield returned to work in Santa Fe on January 25, 2007, he was asked to gather his belongings. Exhibit A to Doc. 116, 6:2-16. He was placed on administrative leave that same day. 7:6-8. He testified that after he sent the e-mail from Florida he was sure he would be disciplined. 7:9-16. He testified that he "believed" he had spoken with an attorney prior to January 25. 8:2-5. However, he also testified that he had not spoken with his attorney between the time of the conference and the time he returned on January 25. 9:16-18. Mr. Merrifield testified that he advised Defendant Parrish, his supervisor, that he would consult an attorney about the employment situation. 18:16-22. Mr. Parrish responded, "you go and do that Billy, all you're going to do is piss off the County and you're as good as gone." Undisputed Fact ¶ 17, Doc. 112.

The evidence indicates that the investigation in Santa Fe started as soon as the image was sent by cell phone on January 22. Exhibit C to Doc. 116. The investigative report indicated that Merrifield had been apprised of his inappropriate behavior before and this was one of yet another pornographic/sexually explicit transmissions he placed to subordinates at the workplace. *Id.* There is no direct evidence that the investigation was started due to the (presumed) retention of counsel or that the decision to terminate was because Merrifield retained counsel.

In reading the materials presented it is difficult to find that Mr. Merrifield's retention of, or consultation with, counsel had any causal connection to his termination. The evidence presented at the pre- and post termination hearings, where Mr. Merrifield was represented by counsel, indicate a pattern of immature, salacious, and unprofessional conduct sufficient for disciplinary action under the rules and regulations of the department for which he worked. The disciplinary action included termination.

The Hearing Officer's decision found that the Board's finding of termination was supported by substantial evidence. While she indicated that had she reviewed the case *de novo*, she would have recommended demotion and a suspension without pay, she did *not* find that the termination was without basis. The wheels of the disciplinary process started as soon as Mr. Merrifield sent that e-mail to his subordinate and there is simply no evidence of retaliation due to Mr. Merrifield's consulting with counsel. As stated by the Tenth Circuit: "merely suggesting on one occasion to an employee that she 'not get the lawyers involved' simply does not rise to the level of material adversity necessary to sustain a retaliation claim . . . ." *Johnson v. Weld County, Colorado*, -- F.3d--, 2010 WL 430914 (10th Cir. 2010) (citing *Garrison v. Gambro, Inc.*, 428 F.3d 933, 939 (10th Cir. 2005)).

As further evidence of retaliation, Plaintiff alleges that the County had a custom or policy of threatening individuals with severe consequences if they hired a lawyer. Plaintiff attaches affidavits of former County employees to support this contention. Janet Saucedo stated:

> I was present at several meetings when Ms. Romero[2] indicated she was a lawyer and no one wants to hire a lawyer against her. She was very clear and adamant in these statements. It was clear to me that if an employee hired a lawyer in a matter involving the County, that employee's future with the County would be numbered.

Exhibit MB-5, Affidavit of Janet Saucedo.

Another former employee, the booking manager, stated that at upper management meetings "it was mentioned and know [*sic*] that if an employee would hire an attorney in a disciplinary matter, that employee's days with the County would be numbered/or retaliated against. I don't specifically recall who brought this up or when this was stated, but I can say that this sentiment was reiterated several times during my employment." Exhibit MB-5, Affidavit of Sandra Urioste.

Finally, a former employee testified:

> I was present during "closed door" meetings pertaining to personnel actions. At these meetings, Director Romero and Director Parrish were present typically present. (*Sic*) When the subject about employees retaining lawyers during the disciplinary process came up, Director Romero stated words to the effect that she was a lawyer, she is aware of how much it costs for employees to hire lawyers, and that the County would make it extremely difficult and expensive for any employee who hired a lawyer. Deputy Director Parrish also approved of this

---

[2] Annabelle Romero, one of the Defendants, is the Santa Fe County Corrections Director who placed Plaintiff on administrative leave pending an investigation into his alleged misconduct.

>approach.  While I do not recall the exact words either Director Romero or Deputy Director Parrish stated, I do recall that this was their clear intent and gist of the conversation: if you hire a lawyer, you will suffer adverse consequences.

<u>Exhibit MB-6, Affidavit of Petra Sifuentes</u>.

Pursuant to Fed.R.Evid. 701, a "witness may base his testimony upon his perceptions of conversations and, thus, may clarify conversations that are abbreviated, composed of unfinished sentences and punctuated with ambiguous references to events that were clear only to the conversation participants."  *United States v. Sneed*, 34 F.3d 1570, 1581 (10th Cir. 1994) (citation omitted).

The testimony of Sandra Urioste is inadmissible because she cannot link her perceptions to any person, place or subject matter.  *See Vesom v. Atchison Hosp. Association*, 279 Fed.Appx. 624, 632-634 (10th Cir.)(unpublished opinion), *cert. denied*, --U.S.--, 129 S.Ct. 1459 (2008); *Alexis v. McDonald's Restaurants of Massachusetts, Inc.*, 67 F.3d 341, 347-348 (1st Cir. 1995) (citing cases).  Similarly, the testimony of Petra Sifuentes regarding Mr. Parrish is also inadmissible because she has offered no facts to buttress her opinion that he "approved" of this approach.  *Id.*

As for the remainder of Ms. Sifuentes' testimony, and the testimony of Janet Saucedo, accepting their statements and perceptions as accurate, there is no evidence that these conversations led to any unconstitutional conduct.  The Board may have disliked to have attorneys involved in disciplinary matters, but that is a far cry from saying they had a custom or policy of retaliation for the expression of their employee's First Amendment rights. There has been no evidence submitted in this case as to the context of those conversations and there is no evidence of other employees who suffered adverse

consequences for retaining counsel in disciplinary matters. The only allegation of retaliatory conduct is the instant case and all of the evidence points to disciplinary action based on substantial evidence.

Finally, Mr. Merrifield alleges that someone involved with the County caused the New Mexico State Police to rescind its offer of acceptance at the Policy Academy. The evidence submitted includes the testimony of Ms. Saucedo who states that in June, 2008, she overheard Director Annabelle Romero tell Robert Ortiz, a former state police officer, to use his "contacts over at the Law enforcement Academy to prevent Billy Merrifield from attending the police academy." Saucedo Affidavit, Doc. 117-3, Exhibit MB4, at ¶ 7.

In rebuttal, Defendants submit the "Notice of Contemplated Action," a document from the New Mexico Law Enforcement Academy Board. Doc. 116-3, Exhibit L. This document states that the Academy would deny Mr. Merrifield's acceptance into the Academy for his failure to provide the Academy with requested information on his background; namely, his previous indictment for forgery and being "involved in numerous incidents as a suspect in which police reports were filed, including several accusations of assault." *Id.*

> While these reports do not indicate the Respondent was arrested, they do show a disturbing pattern of violent and unethical behavior on his part. These incidents indicate unmoral [*sic*] character and would be grounds for denial, revocation, or suspension of certification under the provisions of 10.29.1.11 NMAC.

*Id.*

Mr. Merrifield argues that the foregoing testimony and the denial of his application to the Academy are further evidence of retaliation by the Defendants. The Court disagrees.

It is a speculative leap to take the Saucedo testimony to mean that the Defendants were actively engaged in sabotaging future employment opportunities because Mr. Merrifield consulted with an attorney. Ms. Romero's statement to Mr. Ortiz only indicates that she didn't think Mr. Merrifield should attend the Academy; there is no evidence as to *why* she believed that. *See Alexis*, *supra* (even if defendant expressed animus to plaintiff, no evidence that animus was racially motivated).

The Court concludes that summary judgment on the issue of qualified immunity is appropriate because no constitutional violation occurred. Summary judgment is appropriate when there are no genuine issues of disputed and material facts. Fed.R.Civ.P. 56(c). The record evidence indicates that Mr. Merrifield was terminated from his position because of unprofessional conduct and that the determination was based on substantial evidence. The record evidence submitted by Mr. Merrifield to support his claim of retaliation for exercising his First Amendment rights is insufficient as a matter of law. *See Johnson*, *supra*. Thus, the First Amendment claims against all Defendants will be dismissed.

IT IS THEREFORE ORDERED that Defendants Board of County Commissioners for the County of Santa Fe, *et al.* Second Motion for Summary Judgment [Doc. 115] is granted; and

IT IS FURTHER ORDERED that Defendant Greg Parrish's Motion for Summary Judgment on the Basis of Qualified Immunity and On Other Grounds [Doc. 112] is granted.

IT IS SO ORDERED.

_____
Richard L. Puglisi
Chief United States Magistrate Judge